[Civ. No. 63266. Second Dist., Div. One. Jan. 4, 1983.]

In re AMERICAN RESERVE INSURANCE COMPANY in Liquidation.
WESLEY J. KINDER, as Insurance Commissioner, etc.,
Plaintiff and Appellant, v.
AMERICAN RESERVE INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Arthur C. de Goede, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Plaintiff and Appellant.

Clausen, Harris & Campbell and Kenneth H. Clausen for Defendant and Respondent.

OPINION

**HANSON, (Thaxton), J.—**

INTRODUCTION

The Insurance Commissioner of California (hereinafter referred to as the California Commissioner), California conservator and liquidator of American Reserve Insurance Company (hereinafter referred to as American Reserve), appeals from the denial by the superior court of his application for an order directing him to retain certain partial refunds of assessments made by the California Insurance Guarantee Association (hereinafter referred to as CIGA) to American Reserve.

FACTS

The California Commissioner and respondents American Reserve and CIGA concur that the background facts are substantially as follows:

American Reserve is a Rhode Island insurer which prior to its insolvency was authorized to transact insurance business in the State of California.

On May 7, 1979, the Insurance Commissioner of the State of Rhode Island (hereinafter referred to as the Rhode Island Commissioner) was appointed temporary receiver of American Reserve and on June 7, 1979, he was appointed permanent receiver of American Reserve in order to liquidate and wind up the affairs of that company.

On May 30, 1979, the California Commissioner was appointed conservator of American Reserve by order of the Superior Court for the County of Los Angeles, (hereinafter referred to as the liquidation court). On July 2, 1979, he was appointed liquidator of American Reserve by order of the liquidation court.

On February 1, 1980, the liquidation court approved an agreement entered into between the California Commissioner and the Rhode Island Commissioner. That agreement provides, inter alia, for the retention by the California Commissioner of sufficient funds of American Reserve in California to pay the administration costs of the liquidation of American Reserve in California; it further provides for the transfer of funds in excess of such costs to the Rhode

Island Commissioner, the domiciliary receiver. In addition, the agreement provides for the collection by the California Commissioner of premium balances, unearned commissions, subrogation and other funds due American Reserve and the transfer of all such funds collected to the domiciliary receiver in Rhode Island.

Prior to the date of institution of insolvency proceedings American Reserve was a member of CIGA. CIGA is responsible upon entry of an order of liquidation of an insolvent insurer, for the payment of covered claims as defined by section 1063 et seq. of the California Insurance Code.[1] Funds for the payment of such claims are obtained by collecting "premium payments" from the members of CIGA which "shall be a uniform percentage of net direct written premium in the preceding calendar year. . . ." (Ins. Code, § 1063.5.) The CIGA membership includes all insurers licensed to write property and casualty insurance in the State of California. (Ins. Code, § 1063.) CIGA may determine, following an assessment of its members, that it has overestimated the amount of liability for covered claims of an insolvent insurance company and thus has assessed premium payments in an amount in excess of CIGA's liability for that insolvent insurance company. CIGA was, at the time of this proceeding, required to return to its members the excess assessment pursuant to section 1063.5 of the Insurance Code.[2]

On March 31, 1980, the California Commissioner received $4,017 representing a partial refund by CIGA of an earlier overassessment of American Reserve attributable to the liquidations of Los Angeles Insurance Company, Transnational Insurance Company, Westgate California Insurance Company, Summit Insurance Company and Key Insurance Exchange.

On June 20, 1980, the California Commissioner received $4,949 representing a second refund by CIGA on account of the overassessment of American Reserve because of the insolvencies of Summit Insurance Company and Eldorado Insurance Company. All of those insolvencies and the assessments pertaining thereto occurred before May 7, 1979, the date of the order appointing the Rhode Island Commissioner temporary receiver of American Reserve.

On July 17, 1980, the executive director of CIGA wrote to the California Commissioner and asked for the return of the refunds made to him as liquidator

---

[1] Hereinafter all section references are to the California Insurance Code unless otherwise stated.

[2] As of August 27, 1982, CIGA was authorized by amendment to section 1063.5 to either return the excess premium payments or to retain these funds to apply them in reduction of future premium charges. (Sen. Bill No. 1167, ch. 622 (1982 Reg. Sess.) § 1.)

of American Reserve and certain other companies in liquidation. He contended as a basis for this request that when the refunds were made to the California Commissioner as liquidator of the various insurance companies, those companies in liquidation were no longer members of CIGA and they therefore were not entitled to the refunds under section 1063.5 of the Insurance Code.

The total partial refunds from CIGA to the California Commissioner amounted to approximately $95,000. The Rhode Island Commissioner and the California Commissioner opposed the return of the partial refunds of assessments, contending that American Reserve was entitled to the refunds and that the California Commissioner as liquidator of American Reserve was entitled to retain those assets.

On December 23, 1980, the California Commissioner filed an order to show cause and order reassessment of refunds from CIGA wherein he asked the liquidation court for an order directing him to retain the partial refunds of assessments and directing CIGA, when mailing any partial refunds of assessments in the future, to make such refunds to the conservator or liquidator of any company that would have received the refunds were it not in conservatorship or liquidation.

The liquidation court issued an order to CIGA to show cause why the requested order should not be granted and, following CIGA's response, a hearing was conducted on February 18, 1981. The liquidation court thereupon denied the relief prayed for by the California Commissioner and ordered him to return to CIGA the partial refunds of assessments made to him by CIGA. The California Commissioner has appealed.

ISSUE

The California Commissioner contends that the trial court erred in denying his application for an order authorizing him to retain as liquidator of American Reserve partial refunds of premium assessments by CIGA and directing CIGA to make such payments to him in the future.

DISCUSSION

The California Commissioner contends that the right to a partial refund of a premium payment assessed is an asset of the insurance company which was originally assessed, and that it therefore should be paid to the liquidator of that company, here the California Commissioner.

Those insurers admitted to transact insurance business in California are required, as a condition of their authority to transact insurance in this state, and they automatically become members of CIGA. (Ins. Code, § 1063.)

Section 1063.5 provides for the assessment of premium charges against the members to CIGA to the extent necessary for CIGA to pay for covered claims and reasonable costs of adjusting such claims, and these assessments of solvent companies are based solely on the insurance writings in California regardless of the state of the company's domicile.[3]

The California Commissioner argues that American Reserve, which went into liquidation, continues to be a "member of the association [CIGA]," and therefore is not "an insurer which ceases to be a member of the association." (Ins. Code, § 1063.5.) Therefore, he claims the right to a partial refund of assessment is an asset of American Reserve which should be paid to the liquidator to be distributed to its creditors. In support of this argument that an insurance company in liquidation does not cease to be a member of CIGA, he relies upon the definition of "member insurer" and "insolvent insurer" supplied by section 1063.1 of the Insurance Code.[4]

Since by statute an "insolvent insurer" appears to be defined by statute as a "member insurer" for which a liquidator is appointed, the California Commis-

---

[3]Section 1063.5 provides, in pertinent part, as follows: "Each time an insurer becomes insolvent then, to the extent necessary to secure funds for the association for payment of covered claims of that insolvent insurer and also for payment of reasonable costs of adjusting such claims, the association shall collect premium payments from its member insurers sufficient to discharge its obligations. . . . The rate of premium charged shall be a uniform percentage of net direct written premium in the preceding calendar year applicable to such category. 'Net direct written premiums' shall mean the amount of gross premiums, less return premiums and policyholder's dividends paid or allowed, received in such calendar year upon business done in this state, other than premiums received for reinsurance. . . . The association may exempt or defer, in whole or in part, the assessment of any member insurer, if the assessment would cause the member insurer's financial statement to reflect amount of capital or surplus less than the minimum amounts required for a certificate of authority by any jurisdiction in which the member insurer is authorized to transact insurance. . . . Such premium charges shall be recognized in the ratemaking procedures for insurance rates in the same manner that losses are recognized . . . . After all covered claims of the insolvent insurer and expenses of administration have been paid, any unused premiums and any reimbursements or claims dividends from the liquidator remaining in any category *shall be refunded by the association to the member insurers who paid the premiums* for such category in proportion to their premiums paid. *However, an insurer which ceases to be a member of the association shall have no right to a refund of any premium previously remitted to the association.* . . . (Italics added.)

[4]Section 1063.1 provides in pertinent part as follows: "As used in this article:

"(a) 'Member insurer' means an insurer required to be a member of [CIGA and is therefore entitled to the partial refund under section 1063.5.]

"(b) *'Insolvent insurer' means a member insurer for which a domiciliary or ancillary liquidator has been appointed* in this state after the effective date of this article." (Italics added.)

sioner claims that an insurer does not cease to be a member insurer simply because it is insolvent and a liquidator is appointed. By this definition American Reserve is a "member insurer" which has not ceased to be a member of CIGA and is therefore entitled to the partial refund under section 1063.5.

The Legislature provided in section 1063.5 that the "association [CIGA] may exempt or defer, in whole or in part, the assessment of any member insurer, if the assessment would cause the member insurer's financial statement to reflect amount of capital or surplus less than the minimum amounts required for a certificate of authority by any jurisdiction in which the member insurer is authorized to transact insurance." There is no language in the statute which would expressly exclude an insolvent insurer from receiving a partial refund of a premium charge found to be excessive.

■ However, the order adjudging American Reserve insolvent and appointing the California Commissioner as its liquidator in this state (ancillary liquidator) which was entered by the superior court of California recites, in part, "5. Respondent (American Reserve Insurance Company), its officers, directors, agents and employees and all other persons are hereby enjoined and restrained from transacting any of the business of respondent in California . . ." If American Reserve may no longer transact business in California, it can no longer claim to be an insurer referred to in section 1063, that is one "admitted to transact insurance in the state." It is then no longer a member of CIGA and its membership in CIGA is not required by section 1063 "as a condition of its authority to transact insurance in this state" at that point since its authority to do so is terminated by the insolvency order.

Even as to an insurance company such as American Reserve, which is domiciled in Rhode Island, the administration of its insolvency in California constitutes a local proceeding and, as pointed out previously, the premium charges imposed on it in California are based upon its California writings alone. The covered claims of insolvent insurers for which these charges were imposed were the claims of California residents alone,[5] and when American Reserve was adjudged insolvent only other members of CIGA were assessed as appropriate and then only on business written in California. The insurers are

---

[5]Insurance Code section 1063.1 provides in pertinent part: Definitions "(c)(1) 'Covered claims' means the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state and (vii) in the case of other classes of insurance if such policy is issued to a resident of this state or claim against an insured thereunder is made by a resident of this state."

permitted to pass these assessed premium charges on to their insurance customers in the form of increased premium rates.[6] Thus the cost is ultimately borne by the insurance-buying public in California.

The California Commissioner, as liquidator, alleges that pursuant to agreement with the Rhode Island Commissioner he has and will, excepting for a portion of American Reserve's assets set aside for his administrative expenses in this state, transmit to the domiciliary liquidator in Rhode Island all other California assets including the assessment refunds which are in dispute here. These funds should instead be returned to the California insurance-buying public by returning the funds to the insurance industry through CIGA. The reduction of the loss and the amount of premium charges imposed on solvent insurers may be applied to reduce insurance premiums and thus could result in a saving to California residents who buy insurance.

This money in essence came from the California insurance-buying public in the first place since it was reflected only in their insurance rates—not on those insurance rates charged outside of California. Clearly if the California Commissioner remits these funds to the Rhode Island liquidator, the money may be used to pay general creditors outside of California. By instead returning the funds to the solvent California insurers who are CIGA members, the benefit will be reflected "in the ratemaking procedures for insurance rates in the same manner that losses are recognized." (Ins. Code, § 1063.5.) Thus the argument that CIGA or the other California insurers will experience a windfall has no merit. CIGA has no authority to retain the excess assessments except for the purpose of returning these funds to other solvent member insurers[7] and pursuant to the statutory scheme the application of these funds to benefit solvent insurers will proportionately reduce premium rates paid by the California insurance-buying public.

Up to the time the insolvency order was entered, American Reserve was a "member insurer" because to that moment it was authorized to transact insurance in California. Once the insolvency order was entered, this authority terminated and its status as a member of CIGA terminated concurrently and automatically as well. As a consequence the right of American Reserve to the return of the excess premium charges assessed by CIGA terminated and the California Commissioner as liquidator of the insolvent insurer is not entitled to retain such funds.

---

[6]See section 1063.5 ". . . Such premium charges (assessments) shall be recognized in the ratemaking procedures for insurance rates in the same manner that losses are recognized . . . ."

[7]By 1982 amendment section 1063.5 of the Insurance Code now authorizes CIGA to retain these funds to be "applied to reduce future premium charges in the appropriate category." The Legislature has to that extent clarified its intention with respect to the treatment of premium charges imposed by CIGA which prove to be excessive.

## Disposition

The order of the trial court denying the petition of the California Commissioner is affirmed.

Spencer, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.