[Civ. No. 68110. Second Dist., Div. Seven. June 18, 1984.]

In re IMPERIAL INSURANCE COMPANY in Liquidation.
BRUCE BUNNER, as Insurance Commissioner, etc., Plaintiff and
Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Respondent.

[Civ. No. 69336. Second Dist., Div. Seven. June 18, 1984.]

In re SIGNAL INSURANCE COMPANY in Liquidation.
BRUCE BUNNER, as Insurance Commissioner, etc., Plaintiff and
Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Plaintiff and Appellant.

Clausen, Harris & Campbell, Kenneth H. Clausen and Marie D. Clause for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—The pivotal issue in this case is who is entitled to the deductibles paid by policyholders to an insurance company which becomes insolvent. The California Insurance Commissioner (commissioner) contends the deductibles are assets of the insolvent companies to which he is entitled as liquidator. (Ins. Code, §§ 1011, 1016, 1037.) The California Insurance Guarantee Association (CIGA) contends the deductibles were held in trust by the insolvent companies awaiting application to the specific claim for which they had been paid and, therefore, CIGA is entitled to the deductibles in accordance with its statutory duty to administer the claims of the companies' insureds. (Ins. Code, § 1063.2.)

We have concluded from the language of the policies, the statutory provisions governing CIGA's activities and the purpose underlying the CIGA legislation the commissioner must hand over the deductibles to CIGA for disbursement in accordance with the provisions of the policies written by the insolvent companies.

 The case also raises issues pertaining to motions for reconsideration and renewed motions under Code of Civil Procedure section 1008, subdi-

visions (a) and (b). We have concluded that a party has knowledge of a court order for purposes of section 1008, subdivision (a) if he or his attorney is present in court when the decision is announced and waives notice. We have also concluded that the new facts presented by the commissioner in support of his reapplication for an order did not warrant granting the order.

## FACTS AND PROCEEDINGS BELOW

Signal Insurance and Imperial Insurance were engaged in writing medical malpractice insurance in this state. Both companies were declared insolvent by the superior court and the commissioner was appointed liquidator of both companies. (Ins. Code, § 1016.) As liquidator, the commissioner is empowered, among other things, to marshal the assets of the companies and distribute available funds to all creditors according to statutory priority. (Ins. Code, §§ 1033, 1037.)

The insolvency orders also brought into play the statutory obligations of CIGA (Ins. Code, §§ 1063-1063.14.) CIGA is an involuntary, unincorporated association of insurers admitted to transact business in California. Each insurer is required to participate in CIGA as a condition of doing business in this state. The statutory purpose of CIGA is to provide for each insurer member insolvency insurance to pay the claims arising out of policies issued by an insolvent insurer. (Ins. Code, § 119.5, 1063 et seq.) Funds for the payment of such claims are obtained by collecting premium payments from its members. (Ins. Code, § 1063.5.) CIGA is limited to the payment of "covered claims" which are defined in relevant part as "obligations of an insolvent insurer, . . . imposed by law and arising out of an insurance policy of the insolvent insurer . . . which were unpaid by the insolvent insurer . . . ." (Ins. Code, § 1063.1, subd. (c) (1).)[1]

The malpractice policies of Signal and Imperial were issued on a standard form which contained provisions for a deductible amount payable in the event of a claim by the insured. The deductible provision provided in relevant part: "All or part of such deductible as the Company requests shall be immediately remitted by the Insured at the initiation of any claim or suit or the happening of any occurrence that may, in the judgment of the Company, give rise to a claim or suit. Such deductible shall first be applied to the payment of any claim or suit resulting from each occurrence and if such payment does not exceed the deductible, the remainder (or in event no claim or suit payment is made the deductible) shall be applied to the payment of investigation costs and expense, attorney's fees, court costs or other ex-

---

[1]For a detailed description of the composition and operation of CIGA, see Barger, *California Insurance Guarantee Association* (1970) 45 State Bar J. 475.

penses. If the combined claim or suit payment and cost of investigation, attorney's fees, court costs or other expenses are less than the amount received from the Insured pursuant to these provisions, such remainder shall be returned to the Insured. Failure of the Insured to remit the amount of the deductible requested within fourteen days after such request shall, at the option of the Company, nullify and terminate the application of the insurance with respect to such claim, suit or occurrence and with respect to any subsequent claim, suit, or occurrence to which the policy would otherwise apply. . . ."

At the time of the insolvency orders there were many open active claim files for claims under the Signal and Imperial medical malpractice policies. The companies had followed a practice, as provided for in the policies, of requiring the insureds to remit the deductible amounts when claims or suits were first reported. The companies placed the deductible amounts in their general assets and paid insurance gross premiums taxes to the State of California upon those deductible amounts. The deductible amounts were held until the case on which a deductible had been remitted was closed by settlement, judgment, or dismissal, at which time, in accord with policy provisions, the deductible was applied first toward the payment of the settlement or judgment, and if that did not exhaust the deductible, then to reimburse the company for its defense costs, all as provided for by the above provisions of the policy. Upon the making of the insolvency orders and the appointment of the commissioner as liquidator, the commissioner took possession of the deductible amounts.

Following the insolvency orders, CIGA took over the active medical malpractice claim files and performed its statutory duties in connection therewith. When CIGA closed a claim by settlement or the payment of a judgment or because the suit was not prosecuted to trial after five years, it called upon the commissioner for payment to it of the deductible or such part thereof as was applicable to said claim or suit under the aforesaid policy provisions, CIGA having advanced funds for defense and settlement. Initially the commissioner honored these requests. Later, the commissioner changed his position and contended that the policy deductibles were general assets of the insolvent companies to which CIGA had only a fifth priority claim. (See Ins. Code, § 1033, subd. (a)(5).)

CIGA filed a petition in the liquidation proceedings for an order directing the commissioner to pay to CIGA the policy deductibles as the cases are closed. The commissioner countered with a petition for an order directing CIGA to return the deductibles previously paid to it.

On September 14, 1981, both petitions were heard by the superior court. The court announced from the bench it was granting CIGA's petition and

denying the commissioner's. Counsel for CIGA was directed to prepare attorney orders in both matters. Notice was waived by both parties. Copies of the proposed orders were served on counsel for the commissioner on September 21, 1981. The orders were signed by the trial judge and filed on September 23, 1981. The record does not show that conformed copies of the order were served on the commissioner.

On October 26, 1981, the commissioner moved for reconsideration of the order directing him to pay the policy deductibles to CIGA and renewed his motion for an order directing CIGA to pay back the deductibles previously paid to it. The trial court denied both motions.

The commissioner appeals from the orders granting CIGA's motion and denying the commissioner's motions. We affirm the orders.

## DISCUSSION

A. ▉ *CIGA Is Entitled to the Deductibles Because They Represent Funds Held in Trust for the Insureds and Are Not Available to Satisfy. Claims of the Insurers' General Creditors.*

It is clear from the policy language quoted above that the deductibles were not assets of the insurance companies but were held in trust for the insureds pending the outcome of the specific claim or suit for which the deductible had been paid. Our conclusion is based in part on the specific provisions about how the deductibles could be used. The deductible must be applied first to the payment of any claim or suit and next to the payment of investigative costs, attorney's fees, court costs or other expenses related to that specific claim. The remainder shall be returned to the insured. Under this arrangement the insurance companies held the deductibles in a resulting trust. (See *Dabney* v. *Philleo* (1951) 38 Cal.2d 60, 68 [237 P.2d 648], 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 123, p. 5481.) Thus, the commissioner is not entitled to these funds to satisfy the personal obligation of the insolvent companies. (See *Herrick* v. *State of California* (1983) 149 Cal.App.3d 156, 161 [196 Cal.Rptr. 663].)

We also note that the deductibles under these policies are not merely disguised premiums. As explained in *Metropolitan Life Ins. Co.* v. *State Bd. of Equalization* (1982) 32 Cal.3d 649, 660 [186 Cal.Rptr. 578, 652 P.2d 426], an insurance premium ordinarily includes two elements, the net premium—the expected level of aggregate claims payments to all insureds and the loading consisting of administrative costs, a charge for assuming the risk claims will exceed the expected level and profit. The deductibles in the case at bench were not based on the expected level of aggregate claims.

They were tied to each separate occurrence insured under a policy and payable only if such occurrence arose. (Cf. *Metropolitan, supra,* 32 Cal.3d at p. 653.) The deductible did not cover the risk borne by the insurance company nor an element of profit. The deductible covered the expenses directly related to the claim but only to the extent funds remained after paying the claim. The deductible could not be used for the general administrative expenses of the companies.

Furthermore, the statutes governing CIGA and the public policies they implement support CIGA's claim to the deductibles.

The authority of CIGA extends only to the payment of "covered claims" (Ins. Code, § 1063.2, subd. (a)) defined as "the obligations of an insolvent insurer . . . (i) . . . arising out of an insurance policy of the insolvent insurer . . . ." (Ins. Code, § 1063.1, subd. (c)(1).) For the most part CIGA administers a claim as the insurer would have had it remained solvent. CIGA is given the "same rights as the insolvent insurer would have had if not in liquidation, including . . . the right to . . . adjust, compromise, settle, and pay a covered claim . . . ." (Ins. Code, § 1063.2, subd. (b).) A necessary concomitant of these rights and duties is entitlement to the policy deductible.

If the companies were solvent it is clear they would not have to pay the deductible portion of the claim. In fact, if the insured failed to remit the deductible to the company on demand the company had the right not to pay any part of the claim. This is in contrast to policies cited by the commissioner in which the insurer was obligated to pay the claim regardless of whether the insured remitted the deductible. (48 Ops.Cal.Atty.Gen. 49, 53 (1966); *Metropolitan, supra,* 32 Cal.3d at p. 657.) We fail to see how the fact the insured is now insolvent operates to convert a deductible into a premium, as the commissioner asserts.

We are unpersuaded by the gross premiums tax cases cited by the commissioner. "The purpose of the [gross premiums tax] . . . is not to protect insureds, but rather to exact payments from insurers doing business in California; the gross premiums measure is apparently designed to approximate the volume of business done in this state, and thus the extent to which insurers have availed themselves of the privilege of doing business in California." (*Metropolitan, supra,* 32 Cal.3d at p. 656.) It is not necessary for us to decide whether the deductibles paid to the insurance companies are properly taxable as "gross premiums." The question is not whether these deductibles should escape taxation but whether they are held by the insurance company in trust for the insured. Our conclusion that the deductibles are the subject of a resulting trust would not be inconsistent with a holding

that they are properly included in measuring the volume of business done in this state should some court, in the future, so hold.

Were we to accept the commissioner's argument that CIGA is not entitled to the deductibles we would make it virtually impossible for CIGA to carry out its statutory rights and duties to adjust, compromise, settle and pay covered claims. (Ins. Code, § 1063.2, subds. (a), (b)(2).) Moreover, we would be denying the insureds and injured parties the very protection the CIGA statute was intended to provide while at the same time triggering an increase in California insurance rates.

If CIGA were denied access to the deductibles, it would be left with two unsatisfactory alternatives. The first alternative is for CIGA to pay the claim without regard to the policy deductible. This may not be a viable alternative because CIGA lacks authority to pay any but "covered claims." (Ins. Code, § 1063.2, subd. (a); 1063.12, subd. (a); cf. *Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 644-64 [179 Cal.Rptr. 16].) It can be argued that because the policy relieved the insurer of any obligation on the claim to the extent of the deductible the uninsured portion of the loss is not a "covered claim" under Insurance Code section 1063.1, subdivision (c)(1). In any event this alternative may not protect the insured from loss, contrary to the purpose of CIGA, (*E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 371 [187 Cal.Rptr. 879]) and it would trigger an increase in insurance rates—a result to be avoided, if possible, in construing CIGA legislation. (*In re American Reserve Ins. Co.* (1983) 138 Cal.App.3d 906, 912-913 [188 Cal.Rptr. 346].)

Consider, for example, the situation in which an insured is sued shortly before Signal's insolvency. He remits his deductible as required by the policy. The case is settled for much less than the deductible. But, instead of receiving a refund as he contracted for in the policy, the insured finds that he is a very junior creditor of the insolvent insurer, next to last in claims priority. (Ins. Code, § 1033, subd. (a)(5).) The purpose of the CIGA legislation was to protect the insured public from losses occasioned by insurance company insolvencies. (Ins. Code, § 1063, subd. (a); Barger, *California Insurance Guarantee Association, supra,* 45 State Bar J. at p. 482.) In the foregoing example, the legislation has been stood on its head and the insured has become the insurer of parties with higher claims priority, e.g., the state, the United States and other insurance companies, against Signal's insolvency. (See Ins. Code, § 1033, subd. (a).)

Needless to say, requiring CIGA to provide first dollar coverage of claims would increase the cost of insolvency insurance to CIGA's members. That increased cost undoubtedly would be passed on to the public in the form of

increased premium rates. (Ins. Code, § 1063.5; *In re American Reserve Ins. Co., supra,* 138 Cal.App.3d at pp. 912-913.)

If the "covered claim" requirement prevents CIGA from providing first dollar coverage then CIGA's only alternative is to pay the settlement or judgment minus the insured's deductible. This will produce several consequences—all of them bad. First, it will require the insured to pay the deductible twice; once to the insolvent insurance company and a second time to the injured party. Second, the injured party, instead of receiving a check from the insurance company in the full amount of the settlement or judgment, will be required to pursue the insured for the amount equivalent to the deductible. Collection may be difficult because the insured may be unable or, understandably, unwilling to pay the same deductible twice. And, finally, the cost to CIGA of providing insolvency insurance will increase and ultimately be borne by the consumer. Injured parties will not want to pursue the insured for the deductible. Instead they will increase their settlement demand by the amount of the deductible. CIGA will either have to pay the higher settlement demands or litigate more cases thereby increasing administrative costs and running the risk of a substantial loss on an adverse judgment in excess of the settlement offer.

B. *The Trial Court Correctly Denied the Commissioner's Motion for Reconsideration and His Renewed Motion for an Order Directing Return of Policy Deductibles.*

Section 1008 of the Code of Civil Procedure[2] applies to motions to reconsider an order granting or denying a motion (§ 1008, subd. (a)) and to subsequent motions for an order previously denied (§ 1008, subd. (b).) In *Graham* v. *Hansen* (1982) 128 Cal.App.3d 965 [180 Cal.Rptr. 604], the court explained the difference between these two subsections.

"Prior to the enactment of section 1008, subdivision (a) . . . , there was no statutory authorization for a motion for reconsideration, even though such motions were regularly made and heard. [Citations omitted.] . . .

"Newly enacted section 1008, . . . contains provisions relating both to motions for reconsideration and for subsequent applications for the same order. . . . Subdivision (a) of that section now permits any affected party to seek reconsideration of a court's order, regardless of how the court ruled on the motion, provided the motion is based upon an alleged 'different' set of facts and is made within 10 days of knowledge of the court's order.

---

[2]All references are to the Code of Civil Procedure unless otherwise noted.

"In section 1008, subdivision (b), however, the Legislature left the prior law virtually unchanged with respect to subsequent applications by the moving party for the same order. (Fn. omitted.) As did its predecessor section, subdivision (b) applies to renewals based upon 'new' facts and imposes no time limitations on such motions. We have found nothing in the legislative history to indicate any such limitation was intended." (*Id.* at pp. 970-971, fn. omitted; see also (1978) 10 Pacific L.J. 344-346.)

With this background in mind, we proceed with consideration of the commissioner's claims that the trial court erred in not granting his motion to reconsider the order directing him to turn over the policy deductibles to CIGA and in not granting his renewed motion for an order directing CIGA to return the deductibles previously handed over to it. Both motions were based on evidence, not presented at the hearing, that Imperial and Signal had treated the policy deductibles in question as taxable gross premiums.

As we explain more fully below, the trial court properly denied these motions because this new evidence was immaterial to the issue of whether the commissioner or CIGA is entitled to the deductibles and, as to the motion to reconsider, because the motion was untimely.

1. *The Motion to Reconsider Was Untimely Because It Was Not Made Within 10 Days After Knowledge of the Order.*

The triggering event for the 10-day period, "knowledge of the order," is unique in California statutory law. (Cf. § 659, motion for new trial 15 days from mailing or service of notice; 180 days from entry of judgment; Cal. Rules of Court, rule 2(a), notice of appeal 60 days after mailing or service of notice, 180 days after entry; § 473, relief for neglect, etc., reasonable time, not to exceed 6 months after order was taken.)

In construing a statute, "[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Quite obviously, knowledge of the order means something different than entry of the order or mailing of the order and is not necessarily equivalent to service of the order. We disagree with the commissioner, however, that knowledge of the order means "actual" as opposed to constructive notice of the order.

Taken literally, the commissioner's interpretation would mean that the 10-day period does not begin to run until a certified copy of the order is personally served on him. The Legislature did not use the term "actual knowledge" and we find no indication that it intended to change the normal

procedure of giving notice to the party's attorney when that procedure would be otherwise appropriate. (§ 1010.) The cases cited by the commissioner in support of his contention that section 1008, subdivision (a) requires actual knowledge do not involve knowledge of court orders. *Witherow* v. *United American Ins. Co.* (1929) 101 Cal.App. 334, 339 [281 P. 668] gave strict construction to the word "knowledge" as used in an insurance policy to prevent the insurer from escaping liability under the policy. *Green* v. *Stewart* (1930) 106 Cal.App. 518, 528-529 [289 p. 940] held that to support a charge of perjury the accused must have had actual knowledge that she was swearing to something that was false. *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.* (1967) 251 Cal.App.2d 347, 354 [59 Cal.Rptr. 587] construed "knowledge" as used in former Code of Civil Procedure section 1183.1, subdivision (b) pertaining to mechanic's liens on improvements constructed with the "knowledge" of the owner.

We believe the apt analogy is to knowledge of a court order for purposes of contempt proceedings. Surely if there is knowledge of the order sufficient to justify a fine or imprisonment it is sufficient to trigger the time for a motion to reconsider.

■ It has long been recognized that an order can be enforced against a party having knowledge of the order although it was not served at all. (*Golden Gate M. Co.* v. *Superior Court* (1884) 65 Cal. 187, 190 [3 P. 628], and see *People* v. *Saffell* (1946) 74 Cal.App.2d Supp. 967, 979 [168 P.2d 497], citing cases.) The presence of the party's attorney in court when the order was made is sufficient to establish that the party had knowledge of the order. (Cf. *Mitchell* v. *Superior Court* (1912) 163 Cal. 423, 424-425 [125 P. 1061]; *Phillips* v. *Superior Court* (1943) 22 Cal.2d 256, 258 [137 P.2d 838] [party present in court when order made]; *Freeman* v. *Superior Court* (1955) 44 Cal.2d 533, 537 [282 P.2d 857]; *Mossman* v. *Superior Court* (1972) 22 Cal.App.3d 706, 711 [99 Cal.Rptr. 638] [party's attorney present in court when order made].) The difference between *Freeman* and *Mossman* and the case at bench is that in the former cases the party's attorney was present in court when the order was made *and* was served with notice of the order. We do not believe this distinction makes any difference given the rule the party's actual knowledge is sufficient and the rule that the knowledge of the attorney is imputed to the party. (*Mossman* v. *Superior Court, supra,* 22 Cal.App.3d at p. 711.)

■ Our construction of the knowledge requirement in section 1008, subdivision (a) is supported by section 1019.5 added in 1982. That section provides: "When a motion is granted or denied, unless the court otherwise orders, notice of the court's decision or order shall be given by the prevailing party to all other parties or their attorneys, in the manner provided

in this chapter, *unless notice is waived by all parties in open court and is entered in the minutes."* [Italics added.] Thus, section 1019.5 specifically recognizes that one acquires knowledge of the order by being present when it is announced. One cannot waive notice of the order, as the commissioner did here, then claim no knowledge of the order for the reason he was not given the very notice he had waived.[3] (Cf. *Hughes Mfg. etc. Co.* v. *Elliott* (1914) 167 Cal. 494, 495-496 [140 P. 17].)

2. *The Commissioner's Renewed Motion for an Order Directing Return of the Deductibles Was Properly Denied Because the New Facts Presented Were Immaterial.*

As we explained, *ante,* page 297, the fact that the deductibles were taxed as gross premiums is immaterial to the question whether they were held in trust by the insurance companies for the insureds. Therefore the new facts offered by the commissioner did not supply a basis for granting his motion for an order directing CIGA to return the policy deductibles in its possession.

#### DISPOSITION

The orders of the trial court are affirmed.

Thompson, Acting P. J., and Ryburn, J.,* concurred.

---

[3]Even though notice was waived, CIGA sent copies of the proposed orders to the commissioner. This makes the commissioner's claim he had no notice of the order even more untenable.

*Assigned by the Chairperson of the Judicial Council.